IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLARA HARRIS, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  H-09-1678 |
| | § | |
| RICK THALER, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Clara Harris, a state inmate represented by counsel, seeks habeas relief under 28 U.S.C. § 2254 challenging her murder conviction.  Respondent filed a motion for summary judgment (Docket Entry No. 8), to which petitioner responded (Docket Entry No. 9).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS summary judgment and DISMISSES this case for the reasons that follow.

### Procedural Background and Claims

Petitioner was convicted of murder in cause number 918964 in the 177th Judicial District of Harris County, Texas, and sentenced to twenty years incarceration.  The conviction was affirmed on appeal.  *Harris v.  State*, 152 S.W.3d 786 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).  The Texas Court of Criminal Appeals refused discretionary review, and it subsequently denied petitioner's application for state habeas relief without a written order on the findings of the trial court.  *Ex parte Harris*, WR-60,295-03, at cover.

In the instant habeas petition, petitioner claims that trial counsel was ineffective in:

(1)      arguing the non-existent defense of "accident" instead of pursuing lesser included offenses of criminally negligent homicide and manslaughter;

(2)      failing to impeach Lindsey Harris with her prior affidavit, grand jury testimony, and statements; and

(3)      failing to recall expert witness Steve Irwin to rebut the State's expert witness.

Respondent argues that all of these grounds fail on the merits as a matter of law.

*Factual Background*

The state court of appeals set forth the following statement of facts in its opinion:

On July 24, 2002, appellant was notified by a private investigator, whom appellant had hired, that her husband, the complainant David Harris, and Gail Bridges had checked into the Nassau Bay Hilton Hotel.  Shortly thereafter, appellant and her step-daughter, Lindsey Harris, drove to the hotel.  The person at the front desk told them that neither David Harris nor Bridges was registered with the hotel.  Appellant and Lindsey walked to the parking lot and found Bridges's Navigator.  Appellant scratched the Navigator with a key, ripped the rear-window wiper off and bent the front window wipers.  Appellant and Lindsey each called the complainant on his cell phone and told him that one of his children was ill.  They waited near the hotel entrance until they saw the complainant and Bridges leave a hotel elevator holding hands.  Appellant confronted Bridges and a struggle ensued in the hotel lobby between the two women.  Hotel employees broke up the fight and escorted the parties to their vehicles.

After getting into her car, a Mercedes S430, appellant, with Lindsey in the passenger seat, backed out and then accelerated, squealing her tires, and proceeded to the back parking lot area where the complainant's and Bridges' cars were parked.  Appellant drove toward Bridges's Navigator, approaching the rear of the Navigator from the passenger side, and then made a right turn into the open parking space next to the Navigator on the driver's side.  Appellant's car struck the side of the Navigator at the rear and damaged the right side of appellant's car.  The driver's door of the Navigator was open, and

Bridges was standing inside the door.  The complainant was standing to the left of the door in the empty parking space, although his exact location is unknown, and appellant struck the complainant with her car.  Either the complainant became airborne or his body was carried on the hood of the Mercedes as appellant drove over two curbed, grassy medians that separated the rows of parking spaces.  The complainant's body landed or was deposited on the paved area of the parking lot next to the second grassy median approximately 65 feet from where he had first been hit, and appellant drove over the body.  At the time of the incident, the parking lot was nearly empty.

A videotape of somewhat poor quality, taken by the private investigator, shows that the Mercedes made at least two 360-degree turns in this area of the parking lot.  The first circle was wide, followed by a noticeably sharper circle. Appellant then made one more half-circle and stopped the car next to the complainant's body.  The Nassau Bay Police, upon arriving on the scene, summoned emergency medical service and then transported appellant to the police station.

*Harris*, 152 S.W.3d at 788–89.

The trial court on collateral review also set forth a statement of facts regarding the incident.  *Ex parte Harris*, pp. 714-15.  The trial court's rendition echoed that of the appellate court, but added that, "Applicant said, 'I'm going to hit him' in a very determined manner as she drove towards Bridges' vehicle; Harris was standing to the left of the door in the empty parking space, and applicant struck Harris with her car."  *Id*., p. 715.  The trial court further added that, "Applicant eventually stopped her car, exited, and knelt by Harris's body saying, 'David, look what you made me do.'  Harris died soon from overall blunt force trauma."  *Id*.

At trial, petitioner claimed she had no intent to kill David Harris or to commit any act clearly dangerous to human life.  Although petitioner rejected a defense strategy which would

3

have urged guilt on a lesser included offense, the trial court nevertheless instructed the jury that it could find petitioner guilty of murder, manslaughter, or criminally negligent homicide. The jury convicted petitioner of murder, but found in answer to a special issue that petitioner caused David Harris's death under the immediate influence of sudden passion arising from adequate cause.  Petitioner was sentenced to twenty years' incarceration.

## The Applicable Legal Standards

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication of the claim was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or

4

unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

*Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id*. at 687.

5

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694. The issue of prejudice focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id*. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Petitioner poses the following three claims of ineffective assistance of trial counsel.

*Reliance on Non-Existent and Inapplicable Defenses*

In her first ground for relief, petitioner alleges that lead trial counsel, George Parnham, was ineffective in relying on the non-existent defense of "accident" and in arguing that petitioner should be acquitted of murder without arguing in the alternative that she should be convicted of a lesser included offense of criminally negligent homicide or manslaughter.   Petitioner's argument challenges the trial court's determination that Parnahm's trial strategies were reasonable.

In his sworn affidavit submitted to the trial court on collateral review, Parnham testified, in relevant part, as follows:

> At the time of my representation of Clara Harris, I was well aware that the affirmative defense of accident was not recognized in the State of Texas.  I was also aware that the issue in Clara Harris' case focused on her intent, or lack thereof, to kill or commit an act clearly dangerous to human life.  I knew that it was the jury's job to decide the primary issue – if Clara Harris' actions were an 'accident,' then there was no criminal intent to murder her husband or, if the events leading up to the accident were not acts clearly dangerous to human life, then there would be no murder.  In light of my early conversations with Clara Harris, I believed that proving that Clara Harris did not have the required intent to commit murder would be our defense.

> *    *    *    *

> During my discussions with Clara Harris, I explained in great detail the statutory elements of the offense of murder as well as the lesser included offenses of manslaughter and criminally negligent homicide.  I also explained to Clara Harris that, in my opinion, it would be easier to seek a lesser included offense conviction with a probated sentence from the jury as opposed to a not guilty of murder verdict and to 'walk' out of the courtroom.  However, Clara Harris insisted that she was not guilty of any offense and that she had no intent to harm her husband in a fit of passion, do an act clearly dangerous to human

7

life, do an act of criminal negligence or otherwise.  Clara Harris absolutely and
without reservation rejected any defense to the accusation of murder based
upon a lesser included 'defense.'

*     *     *     *

From my pre-trial investigative efforts, I did not believe that there was any
evidence to support statutory or affirmative defenses such as self-defense,
defense of property, defense of third party, entrapment, insanity, mistake of
fact, duress, or necessity.  Clara Harris would not approve of any trial defense
except that she accidentally and unknowingly ran over her husband.

*Ex parte Harris*, pp. 564-566.

In denying petitioner habeas relief on this issue of ineffective assistance, the trial court

made the following relevant finding of fact:

B.    Trial counsel's strategy to rely on 'accident' and lack of the requisite
culpable mental state as a defense was a reasonable and effective trial
strategy that worked to advance counsel's overall goal to obtain an
acquittal for applicant.

*Id*., p. 716.  The trial court noted that, "Counsel understood that 'accident' had not been a

statutory defense in Texas for some time.  Nevertheless, counsel used the term 'accident' as

a convenient lay term for the legalese 'lack of the requisite culpable mental state.'"  *Id*.  In

making these determinations, the trial court stated as follows:

The Court believes, based on counsel's credible testimony, that counsel[1] were
sufficiently prepared for trial and adopted a reasonable trial strategy.  They met
with and interviewed applicant many times before trial to investigate the facts
of the case and to develop a defense strategy.  Applicant gave counsel a

---

[1]Petitioner was represented at trial by George Parnham, Edwin Dee McWilliams, and
Wendell Odom.  *Ex parte Harris*, p. 715.  Petitioner's complaints of ineffective assistance of
counsel are directed primarily at Parnham.

8

detailed account of what happened in the hotel parking lot.  She consistently maintained that she never intended to kill or hurt Harris.  Her only stated intent was to ram Bridges' vehicle.  But she became afraid of ramming Bridges' vehicle and swerved to the left before striking the vehicle.  She did not see Harris or Bridges standing nearby.  Applicant remained steadfast in her recounting of events and her story never changed.  Counsel relied on applicant's detailed description and her candor to help them direct their investigation and formulate a defensive strategy.  In fact, applicant, an educated professional, was instrumental in her defense strategy's formulation.

Counsel thoroughly explained murder's statutory elements – along with the elements of the lesser-included offenses of manslaughter and criminally negligent homicide – to applicant.  Counsel believed the facts did not support a statutory defense such as self-defense, entrapment, insanity, etc., and advised applicant that she should seek a conviction for a lesser-included offense rather than seek an outright acquittal of murder.  But applicant, an intelligent and articulate individual who had practiced dentistry with Harris, rejected counsel's advice and insisted on a defensive strategy focused on an acquittal due to lack of the requisite culpable mental state.

During applicant's trial, counsel presented evidence supporting applicant's defensive theory, which included:

> (1)    accident reconstructionist Steve Irwin's testimony that applicant ran over Harris only once and that at some point, Harris was not visible to applicant as she turned into the parking space adjacent to Bridges' Navigator; and that it was impossible for applicant to stop her car before she hit Harris;

> (2)    applicant's testimony that applicant only intended to smash her car against Bridges' car and it never occurred to applicant that people were standing near the vehicle or could be injured as she rounded the corner to hit Bridges' vehicle;

> (3)    pathologist Paul Radelet's testimony that he believed Harris was run over only one time.

Further, while applicant rejected [a] guilty-of-a-lesser-included-offense strategy, the convicting court, at counsel's request, instructed the jury that they

9

could find applicant guilty of manslaughter or negligent homicide.  Thus, applicant received the benefit of the strategy she had rejected before trial.

*Id.*, pp. 716-717.  The trial court concluded that:

> Applicant has not met her burden of proving by a preponderance of the evidence that she was denied the effective assistance of counsel.  The Court reaches this conclusion after having evaluated all the witness's testimony.  The Court believes applicant was afforded constitutionally effective representation and that counsel's defensive strategies were reasonable.
>
> Because applicant herself rejected any defense other than one aimed precisely at her acquittal, counsel was not ineffective for adopting a reasonable defensive strategy relying on requisite culpable mental state negation.  Further, even if counsel's decision was deficient, the court allowed the jury to find applicant guilty of manslaughter or negligent homicide in addition to murder. Applicant was not harmed.
>
> *   *   *   *
>
> In light of the foregoing, applicant has failed to show that counsel's strategic decisions were unreasonable or that, by a preponderance of the evidence, there is a reasonable probability that the proceeding's results would have been different but for counsel's conduct.

*Id.*, pp. 720-721.  The Texas Court of Criminal Appeals subsequently relied on these findings in denying habeas relief.

To overcome the presumption that Parnham rendered adequate assistance and that the challenged conduct was the product of a reasonable trial strategy, petitioner must identify counsel's acts or omissions that were not the product of reasonable professional judgment. *West*, 92 F.3d at 1400; *Wilkerson*, 950 F.2d at 1065.  In attempting to meet this burden of

proof, petitioner disagrees with the trial court's determination that Parnham's client-driven trial strategy was reasonable under the circumstances.

To the extent petitioner asserts that Parnham's trial strategy was unreasonable because "accident" was not a recognized defense under Texas criminal law, the record and trial court findings do not support her underlying factual contention that Parnham utilized such a defense. To the contrary, the record supports the trial court's finding that Parnham used the term "accident" as a convenient lay term for the legalese "lack of the requisite culpable mental state." *Ex parte Harris*, p. 716. Parnham's use of the term for this purpose is consistent with petitioner's insistence that Parnham limit his trial strategy to seeking a complete acquittal without reliance on "lesser included" charges. Neither the record as a whole nor petitioner herself establishes that Parnham used the term "accident" in reference to an affirmative defense no longer available under state criminal law.

Nor does petitioner establish as ineffective assistance Parnham's purported failure to seek convictions under the lesser included offenses of criminally negligent homicide and manslaughter. Again, the record clearly supports the trial court's finding that petitioner insisted Parnham seek a complete acquittal; petitioner rejected Parnham's recommendation that they avoid a murder conviction by urging the jury to rely on the lesser included offenses.

An independent review of the state court record shows that petitioner has failed to meet her burden of proving ineffective assistance of counsel under *Strickland.* The record and the state habeas findings indicate that Parnham used the word "accident" to convey the

more technical "lack of intent" term to the jury.  The state trial court found that Parnham and co-counsel were sufficiently prepared for trial and adopted a reasonable trial strategy.  *Ex parte Harris*, p. 720.  Petitioner does not establish that Parnham's attempt to explain the legal concept of "lack of intent" to a lay jury using a common term such as "accident" constituted ineffective assistance of counsel.  Further, because petitioner herself rejected any defense other than one aimed at her acquittal, Parnham was not ineffective in adopting a reasonable defensive strategy relying on negating the element of a requisite culpable mental state to the exclusion of promoting the lesser included offenses of criminally negligent homicide and manslaughter.

Even assuming that Parnham's use of the word "accident" or his failure to promote the lesser included offenses were to constitute deficient performance, petitioner does not show that she suffered actual prejudice as a result.  Actual prejudice is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  Nothing in the record demonstrates the existence of a reasonable probability that, but for counsel's use of the term "accident," the result of the proceeding would have been different.  Further, the record shows that petitioner received the benefit of a lesser included offense instruction in the jury charge, and that the jury declined to find her guilty of either criminally negligent homicide or manslaughter.

This Court agrees with the trial court's findings that,

> Because applicant herself rejected any defense other than one aimed precisely at her acquittal, counsel was not ineffective for adopting a reasonable defensive strategy relying on requisite culpable mental state negation. Further, even if counsel's decision was deficient, the court allowed the jury to find applicant guilty of manslaughter or negligent homicide in addition to murder. Applicant was not harmed.

*Id.*, p. 721. Petitioner fails to show that Parnham's trial strategy was unreasonable, and fails to establish either deficient performance or prejudice.

The state habeas courts denied relief on this issue of ineffective assistance of counsel. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

### Failure to Impeach Lindsey Harris

Petitioner complains that Parnham was ineffective in failing to impeach Lindsey Harris ("Lindsey") in three separate instances. Petitioner asserts in the first instance that Parnham failed to impeach Lindsey with prior incriminating statements appearing in an affidavit Lindsey gave to the police following the incident. In his affidavit submitted on state collateral review, Parnham stated that he reviewed Lindsey's police affidavit and found it brief and cursory. He noted that Lindsey testified at trial to a number of factual circumstances regarding the incident that did not appear in her police affidavit.

13

Petitioner complains in the second instance that Parnham failed to impeach Lindsey with her grand jury testimony.  In his affidavit, Parnham testified that he reviewed Lindsey's grand jury testimony and discovered she had admitted to hating petitioner and wanting petitioner to go to jail for killing her father.  Under the third instance, petitioner argues that Parnham failed to impeach Lindsey with a prior statement she made to a friend regarding Lindsey's civil suit against petitioner for the death of her father.

In his affidavit submitted to the trial court on collateral review, Parnham explained his reasons for not pursing impeachment of Lindsey, and testified as follows:

> Prior to trial, I made the necessary preparations to aggressively cross-examine Lindsey Harris and to vigorously impeach her credibility if I determined that such tactics were necessary or desired.  However, I found that Lindsey Harris presented an extremely difficult and sensitive challenge on cross-examination. I believed that Lindsey Harris could be the most important witness for the State in its prosecution of Clara Harris.   Although I was prepared to aggressively cross-examine Lindsey Harris, I leaned toward cross-examining her as gingerly as possible.

> During trial, Lindsey Harris presented as a very sympathetic figure.  During my cross-examination, I made the decision to gently cross-examine Lindsey Harris in order to avoid an exacerbation of the obvious sympathy that the jury felt for her.  Additionally, a spillover effect from a harsh and critical cross-examination, in my mind, could tend to impact a jury's ability to view Clara Harris as a sympathetic figure.  Lindsey Harris' statement made before the Grand Jury about hating Clara Harris and wishing her in jail from Lindsey Harris' perspective was understandable given the circumstances of what she witnessed happen to her father.  To vigorously cross-examine her about the statement in my professional opinion would have been a mistake.  As a result, I did not aggressively cross-examine Lindsey Harris concerning this statement to the Grand Jury.

14

Additionally, I was prepared to vigorously cross-examine Lindsey Harris about her statement to the police.  During the prosecutor's questioning, Lindsey Harris testified about matters that were not reflected in her statement made available to me prior to trial.  However, to underscore her poignant and dramatic trial testimony by challenging her credibility with this previous statement, albeit incomplete, would, in my opinion, only give the prosecutor the opportunity to revisit the death and Lindsey Harris' state of mind at the time of her father's death.  Therefore, I refrained from cross-examining Lindsey Harris on her incomplete statement.

Furthermore, I was concerned about the substance of Lindsey Harris' statements to Christina Fondren.  More importantly, the point had been made before the jury about the pending civil litigation against Clara Harris.  I attempted to elicit from Christina Fondren evidence that Lindsey Harris was told by her civil lawyers to 'get her story straight' and 'not make any additional statements' so that the civil lawsuit would not be negatively impacted. However, the judge disallowed the bigger portion of my questioning.  A decision to call Lindsey Harris back to the stand to elicit the information from her civil lawyers was outweighed by the downside of re-presenting her to the jury.  As a result, I made the decision not to recall Lindsey Harris to address this topic.

*Ex parte Harris*, pp. 567-569.

The trial court denied petitioner habeas relief on these issues of ineffective assistance

and made the following relevant finding of fact:

C.    Counsel's decision not to impeach eyewitness Lindsey Harris because to do so might increase her sympathetic appearance before the jury [sic].  Counsel's decision to treat Lindsey with 'kid gloves' was reasonably strategic and worked to advance counsel's overall goal to obtain an acquittal for applicant.

*Id*., p. 717.  In making these determinations, the trial court stated as follows:

Lindsey witnessed applicant running over Harris and gave several statements before applicant's trial.  Counsel knew about Lindsey's statements and attempted to obtain a statement from her as well.  The State presented Lindsey

15

as a witness.  Ultimately, counsel elected not to aggressively cross-examine Lindsey, because she presented as a very sympathetic figure at trial.  Counsel decided to treat Lindsey with 'kid gloves' and trust the jury to realize that she was angry and had an understandable bias against applicant along with a motive to exaggerate her story.  These strategic decisions were reasonable.  To aggressively cross-examine Lindsey would serve only to inflame the jury and possibly impact the jury's ability to view applicant as a sympathetic figure.  Counsel chose to refrain from challenging Lindsey's credibility as it related to her pre-trial statements because it would serve only to give the State an opportunity to revisit Harris's death, and Lindsey's attendant state of mind.

Instead, counsel cross-examined Lindsey in a manner that benefited the defense:  counsel elicited testimony portraying applicant in a positive manner, such as testimony:  regarding the close relationship between Lindsey and the applicant; Lindsey's urging the complainant to stay married to applicant; applicant's devotion to her children; other individual's fondness for applicant; the close relationship between applicant and Harris's parents, even after Harris's death; and applicant's emotional devastation after learning about Harris's and Bridges' relationship.

Counsel also elicited testimony during Lindsey's cross-examination that portrayed Harris in a less sympathetic light, such as Harris's deception about [his] relationship with Bridges, and the fact that Lindsey was a party to a pending civil lawsuit against applicant that could impact Lindsey's testimony.

Moreover, even if counsel had been somehow deficient in failing to more aggressively cross-examine Lindsey or point out any inconsistencies between Lindsey's prior statements and trial testimony, applicant fails to demonstrate how this harmed her.

*Id*., pp. 717-18.  The trial court concluded that:

Applicant has not met her burden of proving by a preponderance of the evidence that she was denied the effective assistance of counsel.  The Court reaches this conclusion after having evaluated all the witness's testimony.  The Court believes applicant was afforded constitutionally effective representation and that counsel's defensive strategies were reasonable.

*      *      *

16

>Counsel's decision to treat Lindsey with 'kid gloves' was a reasonable strategy. If Counsel had impeached Lindsey's testimony with various pretrial statements as applicant contends counsel should have . . . the proceeding's result would not have been any different. More aggressive cross-examination of a vulnerable teenage witness whose father had been killed would not necessarily have benefited applicant.
>
>\*　\*　\*　\*
>
>In light of the foregoing, applicant has failed to show that counsel's strategic decisions were unreasonable or that, by a preponderance of the evidence, there is a reasonable probability that the proceeding's results would have been different but for counsel's conduct.

*Id.*, pp. 720-721. The Texas Court of Criminal Appeals subsequently relied on these findings in denying habeas relief.

It is petitioner's burden to establish that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance at the time that they occurred. *Strickland*, 466 U.S. at 690.

As previously noted, Parnham testified in his affidavit that Lindsey presented as a sympathetic figure during trial, and he believed the jury would understand and sympathize with Lindsey's hating petitioner and wanting her to go to jail because of what happened. Parnham stated that he feared an aggressive cross-examination of Lindsey regarding her affidavit, grand jury testimony, and prior statements would garner additional sympathy for Lindsey that could spill over into preventing the jury from viewing petitioner in a sympathetic light. To that end, he therefore decided to refrain from conducting a harsh cross-

17

examination of Lindsey.  *Ex parte Harris*, p. 217.  Parnham additionally noted that the trial judge disallowed him from pursuing certain avenues of questioning, and that re-calling Lindsey to question her about the instructions given to her by her civil lawyers would provide the State further opportunity to explore Lindsey's state of mind at the time of her father's death.  *Ex parte Harris*, p. 218

The trial court found that Parnham exercised reasonable professional judgment in his trial tactics by mitigating Lindsey's ability to garner additional jury sympathy or damage the jury's view of petitioner.  It further determined that it was reasonable for Parnham to decide to cross-examine Lindsey in a manner designed to portray petitioner in a positive light, rather than aggressively attacking Lindsey's credibility.  The court noted Parnham's concerns that aggressively cross-examining Lindsey would be detrimental to the defense and allow the State to revisit Lindsey's state of mind at the time of her father's death.  *Ex parte Harris*, pp. 717–18.  The trial court also found that Parnham was reasonable in trusting the jury to realize that Lindsey was angry with petitioner and had a bias against her, and that she could have a motive to exaggerate her testimony.  *Id*.

This Court has independently reviewed the state court record and finds that petitioner fails to establish that Parnham's trial strategy was unreasonable under the circumstances.  It was a reasonable tactic for Parnham to cross-examine Lindsey in a manner that would minimize jury sympathy for her, as well as minimize the State's opportunity to further explore her state of mind.  No deficient performance is shown.  Even assuming Parnham

were deficient in failing to aggressively cross-examine and impeach Lindsey with her prior statements, petitioner fails to show that, but for such deficient performance, there is a reasonable probability that the outcome of the trial would have been different.

The state habeas courts denied relief on this issue.  Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

### *Failure to Recall an Expert Witness on Rebuttal*

The record shows that, during the defense's case-in-chief, accident reconstructionist Steve Irwin testified that petitioner's vehicle ran over David Harris no more than once, and that petitioner's vehicle was traveling at a speed insufficient to render David Harris's body airborne.  In rebuttal, the State called Officer Rolando Saenz, a Houston Police Department officer with experience in accident reconstruction.  Saenz contradicted Irwin's testimony by claiming that Irwin had omitted a tire mark from his crime scene diagram, which rendered Irwin's conclusions questionable.  Saenz was of the opinion that petitioner ran over David Harris at least twice, based on his own analysis of the evidence.  Petitioner complains that trial counsel was ineffective in failing to recall Irwin to counter Saenz's damaging testimony.

In his affidavit submitted to the trial court on collateral review, Parnham testified, in relevant part, as follows:

In the defense of the case-in-chief, I called Steve Irwin to testify about his intensive investigation and the corresponding scientific evidence. Steve Irwin had prepared a re-creation of the incident at the Nassau Bay Hilton parking lot that corresponded with the videotape from the private investigator and other technical evidence. Some of Steve Irwin's evidence was not allowed to be presented to the jury. Steve Irwin also testified regarding his 'unmistakable conclusion' that the Mercedes did not run over David Harris more than one time. In response to Steve Irwin's testimony the State presented Officer Saenz who testified in a manner that conflicted with Irwin's testimony in both methodology and conclusions. Significantly, Officer Saenz said that there was one particular 'tire-mark' present indicating more than a single run-over.

At the close of that day's testimony a meeting was held in the office of Wendell Odom who had some limited involvement in Clara Harris' defense. Present at that meeting was Steve Irwin, Odom, McWilliams and myself. Steve Irwin was incredulous when it was suggested he could have missed a 'tire mark.' Steve Irwin indicated he would spend the evening checking to see if the additional 'tire mark' could have made a difference in his conclusion. I had made it clearly known to him that he would be recalled only if his testimony would be totally consistent with his previous testimony. The next morning on my way to court, I spoke with Steve Irwin about his overnight findings. To his credit, Irwin stated if we called him, 'he would have to tell the truth;' he had missed the 'tire-mark' and the 'tire-mark' could be evidence of at least an additional run-over. I decided not to recall Steve Irwin since this concession about the missed 'tire-mark' would likely be detrimental to our defense.

*Ex parte Harris*, pp. 569-70.

In denying petitioner habeas relief under this issue of ineffective assistance, the trial

court made the following relevant finding:

E.   Counsel was not ineffective for failing to recall accident reconstructionist Steven Irwin.

*Id.*, p. 718. In reaching this determination, the trial court stated as follows:

Counsel presented Steve Irwin, an accident reconstructionist, during the guilt-innocence portion of applicant's trial.  Irwin testified that her vehicle ran over Harris no more than one time, and applicant's car was not traveling at a speed that would have propelled Harris's body.

The State presented Rolando Saenz, a police officer with expertise in accident reconstruction, who contradicted Irwin.  Saenz believed that Irwin had omitted a tire mark from his crime scene diagram, thereby rendering his conclusion questionable.  Saenz concluded applicant ran over Harris more than twice.

After Saenz's testimony, Irwin admitted to counsel that he had in fact missed the additional tire mark referred to by Saenz and concluded that the additional tire mark rendered his conclusion inaccurate and could be evidence that applicant ran Harris over more than once.

Counsel elected not to recall Irwin because his potential testimony, conceding his failure to consider the additional tire mark, would be detrimental to the defense and subject of potentially damaging cross-examination by the State.  Counsel believed not recalling Irwin allowed him to argue to the jury that the experts merely disagreed.

Counsel's decision not to recall Irwin was reasonable.

*Ex parte Harris*, pp. 718-19.  The trial court concluded that:

Applicant has not met her burden of proving by a preponderance of the evidence that she was denied the effective assistance of counsel.  The Court reaches this conclusion after having evaluated all the witness's testimony.  The Court believes applicant was afforded constitutionally effective representation and that counsel's defensive strategies were reasonable.

*            *            *            *

Counsel's decision not to recall defense expert Steve Irwin following Irwin's assertions that he had failed to account for a second set of tire tracks and that he could no longer rule out Harris being run over a second time, was reasonable.

*            *            *            *

21

> In light of the foregoing, applicant has failed to show that counsel's strategic decisions were unreasonable or that, by a preponderance of the evidence, there is a reasonable probability that the proceeding's results would have been different but for counsel's conduct.

*Id.*, pp. 720-721.  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

Petitioner disagrees with the trial court's determinations, and asserts that there was no sound strategic reason not to recall Irwin.  Petitioner argues that, because Parnham failed to recall Irwin, Saenz's testimony remained uncontroverted, whereas had Irwin been recalled, he could have defended his conclusion because nothing showed that the extra tire mark was made by petitioner's vehicle.

Petitioner has the burden of proving that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance at the time that they occurred.  *Strickland*, 466 U.S. at 690.  In his affidavit, Parnham stated that he did not recall Irwin because Irwin would have had an obligation to tell the truth, namely that he missed the other tire mark.  Even if that admission would not have changed Irwin's conclusion, it may have changed the jury's assessment of his credibility and thoroughness, and would have subjected Irwin to additional cross-examination by the State.  Parnham stated he did not recall Irwin because he was unwilling to present a witness whose new testimony would be detrimental to the defense.  The trial court found that this was a reasonable trial strategy, and this Court agrees.  Parnham acted reasonably in choosing not

to recall Irwin because, in doing so, he protected Irwin's credibility and the defense's overall strategy.

Even assuming that Parnham's performance fell below the constitutionally-mandated minimum level of competence, petitioner fails to show that, but for Parnham's decision regarding Irwin, there is a reasonable probability that the result of the proceeding would have been different.  Irwin's conclusions were offered to prove that petitioner was not driving fast enough to propel David Harris's body and that petitioner ran over him only once.  Recalling Irwin's testimony would not have been outcome-determinative; had Irwin been recalled, his testimony would merely have served to affect his credibility by admitting that he had missed the tire mark.  Although petitioner contends that Irwin's credibility would not have been harmed because, according to petitioner, the tire mark was not necessarily from her vehicle, this misses the larger mark.  By admitting that he had missed the other tire mark, regardless of its source, Irwin would have thrown into question both his investigation and his conclusions, damaged his credibility, and potentially harmed the defense.  Given this eleventh-hour change in circumstances, it was reasonable for Parnham to choose the alternative having the lower risk of harm.  The record as a whole does not show that, but for Parnham's failure to recall Irwin, there is a reasonable probability that the result of the trial would have been different.  Thus, petitioner fails to prove prejudice and has not successfully undermined confidence in the outcome of her trial.  *See Strickland*, 466 U.S. at 694.

23

The state habeas courts denied relief on this issue.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

### Conclusion

Respondent's motion for summary judgment (Docket Entry No. 8) is GRANTED. The petition is DENIED, and this case is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED AS MOOT.

The Clerk is to provide a copy of this order to all parties.

Signed at Houston, Texas, on July 27, 2010.

_____
Gray H.  Miller
United States District Judge

24